UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KYLE TETREAULT,

    Plaintiff,

v.

    CASE NO.: 6:18-cv-765-ORL-40-KRS

AT&T,

    Defendant.

_____/

## COMPLAINT

1. Unwanted "Robocalls" are the #1 consumer complaint in America today.

2. The people complaining about harassing robocalls is increasing at an alarming rate. In 2014, 1,949,603 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2015 this number was 2,636,477 and in 2016 it was 3,857,627. In 2017, between January and August the FTC alone has received more than 3,500,000 robocall complaints.[1]

3. AT&T texted the Plaintiff atleast 120 times.

4. AT&T has a corporate policy to robocall and text people thousands of times.

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm*

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

*Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6. Plaintiff, Kyle Tetreault, alleges Defendant, AT&T, texted him more than 120 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and Invasion of Privacy ("IOP").

7. Robocalls and texts are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

8. The TCPA was enacted to prevent companies like AT&T from invading American citizens' privacy and prevent illegal robocalls and texts.

9. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

10. According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live

solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

11. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12. Violations described in the Complaint occurred while Plaintiff was in DeBary, Florida.

## FACTUAL ALLEGATIONS

13. Plaintiff is a natural person and citizen of the State of Florida, residing in DeBary, Florida.

14. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

15. Plaintiff is an "alleged debtor."

16. Plaintiff is the "called party." See Breslow v. Wells Fargo Bank, N.A., 755 F. 3d 1265 (11th Cir. 2014); Osorio v. State Farm Bank, F.S.B., 746 F. 3d 1242 (11th Cir. 2014).

17. Defendant is a corporation with its principal place of business in Bedminster, New Jersey, and conducts business in the State of Florida.

18. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (850) 766-6734.

19. Plaintiff was the "called party" during each text message which is the subject to this lawsuit.

3

20. Defendant intentionally harassed and abused Plaintiff on numerous occasions by texting several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

21. Defendant did not have the "express consent" of the Defendant to text him on his cell phone.

22. "Express consent" is narrowly construed by the Courts.

23. It is the Defendant's burden to prove they had "express consent" per the TCPA to text the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

24. It is the Defendant's burden to prove they had "express consent" per the TCPA to text the Plaintiff on his cell phone using an ATDS for each account they were calling on.

25. Defendant was put on notice Plaintiff did not want the Defendant contacting him.

26. Defendant messaged Plaintiff repeatedly even after Plaintiff requested many times that Defendant not contact him and his number be removed.

27. Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of text messages to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded message.

28. Defendant continued to message Plaintiff regarding possible service of a cell phone account after being asked by Plaintiff for the texts to stop. The 120 text messages from the Defendant came from SMS short code number 993-70.

29. Defendant sent at least one text to (850) 766-6734.

30. Defendant sent at least one text to (850) 766-6734 using an ATDS.

31. Defendant sent at least fifty (50) texts to (850) 766-6734.

32. Defendant sent at least fifty (50) texts to (850) 766-6734 using an ATDS.

33. Defendant sent at least eighty (80) texts to (850) 766-6734.

34. Defendant sent at least eighty (80) texts to (850) 766-6734 using an ATDS.

35. Defendant sent at least one hundred twenty (120) texts to (850) 766-6734.

36. Each text the Defendant made to (850) 766-6734 in the last four years was made using an ATDS.

37. Each text the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

38. Each text the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be texted, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

39. Plaintiff repeatedly requested the Defendant to stop texting his cell phone, however, the Defendant continued to place text messages.

40. Plaintiff's messages with the Defendant, putting them on notice that he did not want to be contacted, were ignored.

41. Defendant has records of the texts with the Plaintiff.

42. Defendant has recorded numerous text messages with the Plaintiff.

43. Defendant has made approximately one hundred twenty (120) texts to Plaintiff's aforementioned cellular telephone number since in or about December of 2017 which will be established exactly once Defendant turns over their dialer records. Plaintiff requested that the Defendant "STOP" sending messages on the first day of the original contact with the Defendant.

44. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive texts even after the Plaintiff replied "STOP" numerous times, with the first

request being on December 2, 2017. Defendant continued to send messages to Plaintiff, with over 120 messages after the initial request to "STOP".

45. By effectuating these unlawful cell phone text messages, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

46. Defendant's aggravating and annoying phone texts trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

47. Defendant's phone texts harmed Plaintiff by wasting his time.

48. Moreover, "wireless customers [like Plaintiff] are charged for incoming texts whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone texts harmed Plaintiff by depleting the battery life on his cellular telephone, and by using his number of texts allocated to Plaintiff by his cellular telephone service provider.

49. Defendant's corporate policy and procedures are structured as to continue to text individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

50. Defendant's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

51. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone texts to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the

)
)

texts. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

52. Defendant never had the Plaintiff's expressed consent for placement of telephone texts to his aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

53. None of Defendant's telephone texts placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

54. Defendant violated the TCPA with respect to the Plaintiff.

55. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA)

56. Plaintiff incorporates Paragraphs one (1) through fifty-five (55).

57. Defendant willfully violated the TCPA with respect to the Plaintiff each time they texted the Plaintiff after he revoked his consent to be texted by them using an ATDS or pre-recorded voice.

58. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed texts made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be texted by them using an ATDS.

59. Defendant, AT&T, repeatedly placed non-emergency telephone texts to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

60. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

61. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, AT&T, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

### COUNT II
### (Invasion of Privacy – Intrusion Upon Seclusion)

62. Plaintiff incorporates Paragraphs one (1) through fifty-five (55).

63. Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

64. All of the texts made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

65. Defendant's persistent autodialed texts to his cellular phone eliminated Plaintiff's right to be left alone.

66. Defendant's autodialed collection texts disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during his work, and continually frustrated and annoyed Plaintiff.

67. These persistent autodialed texts eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with his cellular phone.

68. By texting his cellular phone, Plaintiff had no escape from these texts either in his home or when he left the home.

69. By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

70. Defendant's harassing conduct and tactic of repreatedly autodialing Plaintiff to his cellular phone after requests to stop is highly offensive to a reasonable person.

71. Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

72. As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/Amanda J. Allen, Esq.*
**Amanda J. Allen, Esquire**
Florida Bar No.: 0098228
William "Billy" Peerce Howard, Esquire
Florida Bar No.: 010330
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Amanda@TheConsumerProtectionFirm.com
Shenia@TheConsumerProtectionFirm.com
*Attorneys for Plaintiff*